**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-1297

ANNESHA R. GUYETTE

    Plaintiff,

vs.

SUPERIOR PRECISION SHEET METAL CORP., a Colorado corporation,
dba MICRO METALS, INC.

    Defendant.
_____

**COMPLAINT AND JURY DEMAND**
_____

    Plaintiff, Annesha R. Guyette ("Ms. Guyette"), by and through her undersigned attorney, for this Complaint against Defendant Superior Precision Sheet Metal Corp., dba Micro Metals, Inc. ("Micro Metals"), states as follows:

### Introduction

1.    Ms. Guyette brings this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, §§ 704(a) and 706(g) (42 U.S.C.A. §§ 2000e-3(a) and 2000e-5(g)), for damages to compensate her for the economic loss and other damages caused by Micro Metals' unlawful employment practice committed against her because she is bi-racial (black and white), and female.

2.    Micro Metals employed Ms. Guyette as a Human Resources Generalist from May 29, 2018, until it terminated her on October 17, 2018.

## Jurisdiction and Venue

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Ms. Guyette's claim arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2(a)(1).

4.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because it is where Plaintiff alleges that Micro Metals committed the unlawful employment practice in this case, and because Micro Metals does business and is located in this District.

## Parties

5.     Ms. Guyette is an adult citizen of the State of Colorado and resides at 10883 Torreys Peak Way, Peyton, CO 80831.

6.     Micro Metals is a Colorado corporation, with its principal place of business at 4715 N. Chestnut Street, Colorado Springs, CO 80907.

7.     At all relevant times, Ms. Guyette was an employee of Micro Metals in Colorado Springs.

8.     At all relevant times, Micro Metals employed over 100 employees.

## Exhaustion of Administrative Remedies

9.     On December 10, 2018, Ms. Guyette timely filed a charge of discrimination against Micro Metals with the Colorado Civil Rights Division (CCRD) in Denver, Colorado. She thus complied with § 706(b) of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-5(b)).

10. Ms. Guyette's charge of discrimination was dual-filed with both the CCRD, as the state agency, and the federal Equal Employment Opportunity Commission (EEOC).

11. On November 13, 2019, CCRD mailed a Notice of Right to Sue letter to Ms. Guyette concerning her charge.

12. On February 5, 2020, EEOC mailed a corresponding letter to Ms. Guyette concerning her charge, pursuant to § 706(e) of Title VII (42 U.S.C.A. § 2000e-5(e)), which gave Ms. Guyette notice of the right to institute this civil action within 90 days after receipt of notice.

13. This action is commenced within 90 days of Ms. Guyette's receipt of EEOC's letter.

## General Allegations

14. Ms. Guyette worked in the "office" portion of the company's workplace, which includes an office, an industrial fabrication shop, and a warehouse environment.

15. Ms. Guyette's direct supervisor was Marlene DaRosa, Micro Metals' head of Human Resources. Ms. DaRosa was located at the company's separate facility in California. Ms. DaRosa is white.

16. Ms. Guyette's work area was not a private office. Her telephone discussions with Ms. DaRosa and others could be overheard by other employees.

17. Ms. Guyette communicated constantly with Ms. DaRosa via the Whatsapp chat/texting application on her computer, as well as text messaging on her personal mobile phone.

18. Micro Metals employed two other black women, Kellye Johnson and Erin Gragg, in the office. Ms. Guyette, Ms. Johnson, and Ms. Gragg were the only black female employees in the company at that time.

19. As of February 4, 2019, Micro Metals employed 13 women, of whom 11 were white and 2 were Hispanic. None were black.

20. Ms. Johnson began her employment with Micro Metals on August 13, 2018, initially as a Receptionist, and then began a Fulfillment Coordinator within 11 days thereafter.

21. Ms. Gragg began her employment with Micro Metals on September 16, 2018, as a Purchasing Clerk.

22. All three women were supervised directly or indirectly by Dirk Sandvig, Micro Metals' Production, Planning and Scheduling Manager, and Sandvig's boss, Randall (Randy) Weckman, Engineering Manager, respectively.

23. Mr. Sandvig and Mr. Weckman are both white males.

24. Shortly after Ms. Gragg started her job, Ms. Guyette, Ms. Johnson, and Ms. Gragg went to lunch together.

25. Micro Metals' white women employees went to breakfast together monthly.

26. Mr. Sandvig, Mr. Weckman, Ms. DaRosa, and also the company's Vice President of Operations, Gregory Driscoll, made comments to Ms. Guyette to the effect that "you guys obviously seem to know each other from before."

27. Mr. Driscoll is also a white male.

28.     Ms. DaRosa and Mr. Driscoll spoke directly to Ms. Guyette specifically about their perceptions of her alleged interactions with the other two black women. Ms. Guyette informed Ms. DaRosa and Mr. Driscoll that she did not know either of them before their employment, and also stated that she did not discuss any confidential HR information with either of them.

29.     Upon information and belief, company managers did not comment or express any concerns about any other employees going to breakfast or lunch together.

30.     On September 20, 2018, Ms. DaRosa and Mr. Driscoll informed Ms. Guyette of their suspicion that someone had released or distributed unspecified confidential HR information. They did not tell Ms. Guyette what this information was; they merely stated "it's come to our attention that certain things are getting out", or words to that effect.

31.     Despite not knowing any details of the apparent allegation, Ms. Guyette denied improperly releasing any HR information.

32.     Ms. Guyette then informed Ms. DaRosa and Mr. Driscoll that the company's Financial Controller, Larry Lawrence, had access to her email and was responsible for managing some aspects of the office's information technology.

33.     Mr. Lawrence is a white male.

34.     Ms. Guyette told them that Mr. Lawrence used the same password for each employee's computer accounts, including her own.

35.     To demonstrate this, Ms. Guyette had two other employees witness her make a video recording (using her cell phone) of those employees' ability to access her email from their own accounts. She sent this video recording to Ms. DaRosa.

36. Mr. Sandvig commented that women were "too pretty to work in the warehouse".

37. Mr. Sandvig commented that it was "getting too dark in the warehouse" (referring to non-white employees).

38. Ms. Guyette reported Mr. Sandvig's comments to Mr. Driscoll, whose only response was to comment that the company could not afford to lose Mr. Sandvig.

39. On August 23, 2018, Ms. Guyette told Ms. DaRosa that Mr. Sandvig smelled like alcohol at work. Ms. DaRosa asked Ms. Guyette if any other employees shared that observation, and whether they would be willing to put it in writing. Ms. DaRosa stated that any such information would be confidential and shared only with herself, Ms. Guyette, and Mr. Driscoll.

40. Ms. Guyette replied with the names of multiple other employees who would write a statement regarding their observations of Mr. Sandvig, as well as other employees who came to work hungover and/or smelling like alcohol.

41. Ms. DaRosa and Ms. Guyette discussed how to arrange for Mr. Sandvig to be tested for alcohol intoxication. However, no such test was actually conducted.

42. Ms. DaRosa told Ms. Guyette that she discussed the concerns about Mr. Sandvig's apparent alcohol intoxication with Mr. Driscoll.

43. On September 26, 2018, Ms. Guyette informed Ms. DaRosa that she detected a strong odor alcohol and signs of alcohol intoxication regarding Mr. Sandvig, and that other employees reported the same observations. Ms. Guyette stated she was concerned that Mr. Sandvig's condition posed a threat to workplace safety, as he frequently spent time in the industrial and warehouse areas.

44. Ms. DaRosa told Ms. Guyette that she would speak to Mr. Driscoll about it.

45. Ms. Guyette told Ms. DaRosa that she was going to complaint to the Occupational Safety and Health Administration (OSHA) about her safety concerns regarding Mr. Sandvig.

46. Ms. DaRosa asked Ms. Guyette not to complain to OSHA, and instead to let her talk to Mr. Driscoll about it.

47. On Friday, October 12, 2018, Ms. Guyette told Ms. DaRosa that Ms. Jefferson had complained to her about Mr. Sandvig smelling of alcohol, as well as another female employee who related the same observations.

48. On Monday, October 15, 2018, Mr. Sandvig terminated the employment of Ms. Jefferson. When Ms. Jefferson asked why, Mr. Sandvig replied that "we are rearranging things".

49. Also on Monday, October 15, 2018, Mr. Weckman and Mr. Lawrence terminated the employment of Ms. Gragg. No reason was provided.

50. Also on Monday, October 15, 2018, Ms. DaRosa told Ms. Guyette after the fact about the decisions to terminate the employment of Ms. Jefferson and Ms. Gragg. Ms. DaRosa directed Ms. Guyette to tell Ms. Jefferson and Ms. Gragg that "we are going in a different direction".

51. In the short periods of Micro Metals' employment of Ms. Jefferson and Ms. Gragg (less than two months and one month, respectively), both performed their duties satisfactorily, and did not receive any write-ups or other adverse employment actions.

52. Micro Metals publicly posted an opening for Ms. Jefferson's job a day later.

-8-

53. On Tuesday, October 16, 2018, Ms. Guyette relayed to Ms. DaRosa a request from Ms. Jefferson for a "separation letter", which the company had provided to other former employees. Ms. DaRosa replied that she would ask Mr. Driscoll about it. Ms. Guyette did not receive any further response.

54. On Wednesday, October 17, 2018, Mr. Weckman asked Ms. Guyette to speak to him privately in his office. He asked her if she "was going to file an EO complaint like Kellye [Jefferson]". Ms. Guyette replied that she did not know what Mr. Weckman was talking about. Mr. Weckman then called Ms. DaRosa, and they told Ms. Guyette that her employment was terminated because the company "couldn't trust" her.

55. In its response to her Charge of Discrimination, Micro Metals accused Ms. Guyette of improperly changing her time clock entries. In fact, Ms. Guyette truthfully recorded her actual time worked in both of the company's timekeeping systems, and made changes to reconcile those entries for consistency and accuracy. She also made similar changes for the other employees, with the full knowledge and authorization of the company, as part of her payroll duties.

56. Also in its response to her Charge of Discrimination, Micro Metals falsely accused Ms. Guyette of improperly disclosing employee personal information without authorization.

57. During her employment, the company never communicated either of these false allegations to Ms. Guyette, and it did not take any adverse employment action against her for this or any other reason.

58. These allegations are merely pretexts for Micro Metals' unlawful discrimination against Ms. Guyette based on her sex, race, and color.

**CAUSE OF ACTION:**
**Title VII –Employment Discrimination Based on Sex, Race, and Color**

59. Ms. Guyette incorporates the allegations contained in all of the previous paragraphs.

60. Throughout the period of her employment, Micro Metals treated Ms. Guyette with unfounded suspicion because of her race, color, and sex. Specifically, it considered and made false allegations against her because she went to lunch with the two other black female employees, and because she made multiple valid complaints about white management employees, including but not limited to Mr. Sandvig and Mr. Weckman.

61. Neither Ms. Guyette, nor Ms. Jefferson or Ms. Gragg, had any write-ups or other adverse actions during their employment, and all performed their duties satisfactorily.

62. By terminating Ms. Guyette's employment for Micro Metals discriminated against Ms. Guyette based on her sex, race, and color.

63. As a direct and proximate result of Micro Metals' acts, Ms. Guyette has suffered economic and other loss.

64. Because of the damages she sustained, Ms. Guyette is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages and benefits pursuant to the provisions of Title VII Civil Rights Act of 1964, § 706(g) (42 U.S.C.A. § 2000e-5(g)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Annesha R. Guyette respectfully requests judgment and prays for the following relief:

A.  Back pay;

B.  Damages for the value of lost employment benefits;

C.  Damages for future economic loss;

D.  Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

E.  Punitive damages;

F.  Pre- and post-judgment interest at the highest rate allowed by law;

G.  Plaintiff's costs of this action, reasonable attorney fees and reasonable expert witness fees.

H.  All other legal and equitable relief to which Plaintiff is entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  May 7, 2020

*s/Gary M. Kramer*_____
Gary M. Kramer
Gary Kramer Law, LLC
1465 Kelly Johnson Blvd, Suite 210
Colorado Springs, CO 80920
Tel (719) 694-2783
Fax (719) 452-3622
gary@garykramerlaw.com
Attorney for Plaintiff, Annesha R. Guyette